UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**DELISA A. JONES, REAL　　　　　　　　　　　　　CIVIL ACTION
PARTY IN INTEREST, A.W.**


**VERSUS　　　　　　　　　　　　　　　　　　　　NO. 15-319-RLB**


**CAROLYN COLVIN,
COMMISSIONER OF
SOCIAL SECURITY**

---

### RULING ON PLAINTIFF'S SOCIAL SECURITY APPEAL

---

Delisa A. Jones, on behalf of her minor child, A.W. (Plaintiff), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for childhood benefits (Supplemental Security Income) under the Social Security Act. (R. Doc. 1).  Having found all of the procedural prerequisites met (Tr. 1-5), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . .").  For the reasons given below, the Court **ORDERS** that the decision of the Commissioner is **REVERSED** and this matter is **REMANDED** for further proceedings consistent with this Ruling.

I.      STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## II.     ALJ'S DETERMINATION

A child "under the age of 18 shall" qualify for Supplemental Security Income and "be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner's regulations specify a three-step procedure for evaluating children's disability claims. First, the Commissioner must determine whether the child is engaging or has engaged in substantial gainful activity. If the child is not, the Commissioner must next decide whether the child has any medically severe impairment. Finally, if the child suffers from a severe impairment, the third step is to determine whether the impairment (medically or functionally)[1] meets or equals the severity of an impairment found in the Listings. If the child has such an impairment and the duration requirement is met, the child will be found disabled. 20 C.F.R. § 416.924.

---

[1] An ALJ must assess functional equivalence in children by examining the child's limitations in six domains: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1). An impairment or combination of impairments functionally equals a listed impairment if it results in marked limitations in two domains or an extreme limitation in one domain. 20 C.F.R. § 416.926a(a).

The claimant retains the burden of proof at all steps of the inquiry. *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir.1987).

Here, the ALJ found that Plaintiff was not engaging in substantial gainful activity at step one.  At the second step, the ALJ determined that Plaintiff suffered from a severe impairment — "seizures." (Tr. 49).  Finally, the ALJ rejected Plaintiff's claim at step three.  Relevant here, the ALJ found Plaintiff's impairment did not meet any Listing.  The ALJ acknowledge, but did not discuss, Plaintiff's attorney's argument that Plaintiff met Listing 111.03 (Noncolvulsive Epilepsy). (Tr. 49).  Ultimately, the ALJ found Plaintiff did not meet the Act's definition of disabled between December 12, 2012 (the date of application) and January 16, 2014 (the date of the ALJ's decision). (Tr. 57).  Following the ALJ's denial, Plaintiff sought review before the Appeals Council and presented additional evidence in support of her claim.  The Appeals Council denied Plaintiff's request to review the ALJ's decision.

## III.  DISCUSSION

On appeal, Plaintiff challenges the ALJ's step 3 finding as well as the Appeals Council's failure to evaluate new evidence presented by Plaintiff.

### A.  Appeals Council's Consideration of New Evidence

Plaintiff argues that the Appeals Council committed reversible error by failing to "evaluate or adequately consider new evidence which contradicted the ALJ's findings or at the very least, cast into doubt the soundness of the ALJ's findings." (R. Doc. 9 at 11-13).  According to Plaintiff, she submitted new evidence to the Appeals Council, consisting of "neurology clinic notes through November 2014 as well as seizure diaries and witness statements." (R. Doc. 9 at 12); (Tr. 11-16) (Neurology Clinic notes dated May 13, 2014, September 9, 2014 and November 12, 2014); (Tr. 18-26, 33-42) (seizure diary entries written by claimant's mother between

February and September 2014); (Tr. 29) (March 10, 2014 statement by one of claimant's teachers who witnessed claimant having a seizure on March 5, 2014); (Exhibit 13E, Tr. 168) (February 7, 2014 statement of Patricia Mims about seizure witnessed on September 6, 2013); (Exhibit 12F, Tr. 297) (March 25, 2013 Lab Report); (Exhibit 13F, Tr. 299-303) (September 10, 2013 and January 14, 2014 Neurology Clinic notes).

In its Order denying review, the Appeals Council explained that it "considered" Plaintiff's arguments as well as the "additional evidence" relating to the period before the ALJ's January 16, 2014 decision, which was made part of the administrative record — Statement of Patricia Mims regarding September 6, 2013 seizure; March 25, 2013 Lab Report; September 10, 2013 Neurology Clinic notes; and January 14, 2014 Neurology Clinic notes. (Tr. 1, 5, 168, 297, 299-303). However, the Appeals Council found the temporally-relevant "additional evidence" did not "provide a basis for changing the [ALJ's] decision." (Tr. 2). The Appeals Council further explained that it "looked at" the remaining additional evidence, which post-dated the ALJ's decision (Tr. 11-16, 18-26, 29, 33-42), but found this evidence did not "affect the decision about whether [Plaintiff] [was] disabled beginning on or before January 16, 2014" because it was "about a later time." (Tr. 2).

Relying on *Epps v. Harris*, 624 F.2d 1267 (5th Cir. 1980), Plaintiff contends that "when a Claimant properly presents new evidence and the [Appeals Council] denies review, it must show in its written denial that it has adequately evaluated the new evidence." (R. Doc. 9 at 12). Therefore, the Appeals Council's failure to "discuss[] or evaluat[e]" Plaintiff's newly submitted evidence was "plain error" and warrants remand. (R. Doc. 9 at 13).

In *Epps*, 624 F.2d at 1273, the Fifth Circuit found that the Appeals Council had "perfunctorily adhered to the decision of the hearing examiner" instead of "adequately

evaluat[ing]" the claimant's newly submitted evidence. "The failure alone," the Fifth Circuit explained, "makes us unable to hold that the Secretary's findings are supported by substantial evidence and requires us to remand this case for a determination . . . reached on the total record." *Id.*

*Epps* involved a decision by the Appeals Council to affirm and adopt the ALJ's decision, rather than the Appeals Council's denial of a request for review. *Epps*, 624 F.2d at 1273; *see also Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015) (rejecting a similar argument and distinguishing *Epps* as inapposite to the claimant's case in which the AC denied his request for review); *Parks v. Comm'r of Soc. Sec. Admin.*, 783 F.3d 847, 853 (11th Cir. 2015) (Because *Epps* "arose in a different procedural context, where the Appeals Council *affirmed*" the ALJ's decision, *Epps* "has little bearing on a denial of a request for review."). Because the Appeals Council denied Plaintiff's request for review, *Epps* is inapplicable.

When a claimant requests review, the "Appeals Council may deny [the] request for review or it may decide to review [the] case and make a decision." 20 C.F.R. § 404.981. "When the Appeals Council makes a decision," like it did in *Epps*, "it will follow the same rules for considering opinion evidence as administrative law judges follow." 20 C.F.R. § 404.1527(e)(3); *see also Sun*, 793 F.3d at 511 (citing *Meyer v. Astrue*, 662 F.3d 700, 706 (4th Cir. 2011) ("Only if the Appeals Council grants a request for review and issues its own decision on the merits is the Appeals Council required to make findings of fact and explain its reasoning.")). In that situation, the decision of the Appeals Council acts as the final decision of the Commissioner — not the decision of the ALJ. 20 C.F.R. § 404.981. By contrast, when the Appeals Council denies a claimant's request for review, as it did in Plaintiff's case, "the denial becomes part of the

Commissioner's final decision," *Sun*, 793 F.3d at 511; but, the ALJ's decision will rest as final. 20 C.F.R. § 404.981.

The regulations specifically permit claimants requesting review before the Appeals Council to submit additional evidence, not before the ALJ. 20 C.F.R. §§ 404.968(a), 404.970(b). In those cases, the Appeals Council must consider and evaluate any "new and material" evidence submitted, if it "relates to the period" at issue. 20 C.F.R. § 404.970(b). Here, the Appeals Council found that only some of the evidence related to the relevant time period and only that evidence was considered and made part of the Administrative Transcript — Statement of Patricia Mims; March 25, 2013 Lab Report; September 10, 2013 Neurology Clinic notes; and January 14, 2014 Neurology Clinic notes. (Tr. 1-2, 5, 168, 297, 299-303). For purposes of this appeal, the Court assumes Plaintiff's additional evidence made part of the Administrative Transcript constitutes new and material evidence.[2]

After "evaluat[ing] the entire record, including the new and material evidence," if the Appeals Council finds that the ALJ's conclusion is contrary to the weight of the current record evidence, it will grant the request for review and either issue a decision or remand the case to the ALJ. 20 C.F.R. §§ 404.967(b), 404.979. But if the weight of the evidence is still consistent with the ALJ's decision, the Appeals Council can simply deny the request for review. Contrary to Plaintiff's contention, nothing in the Act or regulations requires that the Appeals Council provide a discussion of the newly submitted evidence or explain its rationale for denying review.

---

[2] The remaining additional evidence submitted by Plaintiff post-dated the ALJ's January 16, 2014 decision (Tr. 11-16, 18-26, 29, 33-42) and was not considered by the Appeals Council or officially made part of the Administrative Transcript as it was "about a later time." (Tr. 1-2, 5). Plaintiff argues, without providing any specific examples or explanation, that this post-dated evidence "directly related to the period on or before the ALJ's decision," but the "AC sloughed it off." (R. Doc. 9 at 13). Plaintiff's conclusory argument is insufficient to warrant consideration of the additional evidence post-dating the ALJ's decision. Indeed, the Court's review of this evidence confirms that it does not shed light on the status of Plaintiff's seizure disorder on or before January 16, 2014. As such, the Court does not consider this evidence on appeal.

Instead, neither the Fifth Circuit's opinion in *Epps*, nor the Act itself, requires the Appeals Council to do anything more than what it did here — state that it considered the new and material evidence in deciding whether to grant review. (Tr. 1-5).[3]

The additional evidence pre-dating the ALJ's decision was made part of the Administrative Transcript and the Court must consider it, along with the evidence before the ALJ, to determine whether substantial evidence supports the final decision of the Commissioner. *Higginbotham v. Barhnart*, 405 F.3d 332, 337 (5th Cir. 2005). This evidence consists of a Statement by Patricia Mims, who observed Plaintiff having a seizure on September 6, 2013 (Tr. 168); a March 25, 2013 Lab Report finding Plaintiff's drug levels were therapeutic (Tr. 297); a September 10, 2013 Neurology Clinic treatment note (Tr. 302-03); and a January 14, 2014 Neurology Clinic treatment note (Tr. 300-01). These new records provide a clearer view of Plaintiff's seizure condition, including the frequency of her seizures in spite of compliance with proscribed treatment, which is a necessary element of Listing 111.03.

The Court considers the newly submitted evidence to be "significant" as it "casts doubt on the soundness" of the ALJ's decision that Plaintiff's seizure disorder did not meet Listing 111.03. *Sun*, 793 F.3d at 512. Although the Appeals Council was not required to, it did not provide an evaluation of this evidence. Therefore, the "uncertainty" created by the conflict between this newer evidence and parts of the ALJ's decision "has not been addressed by a factfinder below." *Sun*, 793 F.3d at 513. Resolution of this conflict requires a reweighing of the evidence — something the Court is not permitted to do on judicial review. *Chambliss v.*

---

[3] The decision of the Appeals Council stated: "[W]e considered . . . the additional evidence listed on the enclosed Order of Appeals Council. . . . We found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 1-2, 5). Nothing more is required. *See Cantrell v. McMahon*, 227 F. App'x 321, 323 (5th Cir. 2007) (Appeals Council adequately considered newly submitted evidence where "In its order, the Appeals Council specifically stated it had considered the additional evidence and found it did not warrant changing the ALJ's disability decision.").

*Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).  And so, remand is warranted for consideration of this newer evidence.

### B. Listing 111.03 (Nonconvulsive Epilepsy)

After finding Plaintiff's "seizures" qualified as a severe impairment at step 2, the ALJ summarily found at step 3 that this condition "d[id] not satisfy any listing in the Listing of Impairments."  The ALJ acknowledged that Plaintiff's attorney argued that Listing 111.03 (Nonconvulsive Epilepsy) was met. (Tr. 49).  Listing 111.03 requires, "In a child with an established seizure disorder, the occurrence of more than one minor motor seizure per week, with alteration of awareness or loss of consciousness, despite at least three months of prescribed treatment."  The child's seizure disorder "must be documented by characteristic EEG pattern, plus information as to age at onset and frequency of clinical seizures." Listing 111.00B.

The ALJ did not offer any discussion or cite to a single piece of evidence supporting his finding that Plaintiff's seizure disorder did not meet Listing 111.03.  The ALJ's failure to explain his finding at step 3 was erroneous and precludes the Court from conducting a meaningful judicial review.  *See*, *e.g.*, *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (a bare and summary conclusion that a plaintiff does not meet the criteria of any Listing is beyond meaningful judicial review.).  Remand, however, is not warranted on this error alone.  Instead, the Court must determine whether the error was harmless.  The ALJ's decision will only stand if the error was harmless — i.e., did not affect Plaintiff's substantial rights. *Audler*, 501 F.3d at 448.

To meet Listing 111.03, the record must contain evidence that Plaintiff has an established seizure disorder and experiences more than one minor motor seizure per week, despite at least three months of prescribed treatment.  First, the ALJ found that Plaintiff suffered from a severe

seizure disorder and the record confirms this diagnosis through an EEG conducted on November 29, 2012, which was abnormal. (Tr. 173).

The record further indicates that Plaintiff experienced more than one seizure per week and that her seizures persisted in frequency, despite three months of prescribed treatment. Plaintiff's neurology records report that she began having "true seizures" in November of 2012 (Tr. 255), which is consistent with the abnormal results of the November 29, 2012 EEG confirming Plaintiff's seizures (Tr. 173, 295). Plaintiff's pediatrician, Dr. Brian Despinasse, began prescribing Keppra to treat Plaintiff's seizures around late November or early December of 2012. (Tr. 178-80, 245). On January 25, 2013, Plaintiff's mother reported that the frequency of her daughter's seizures had decreased since beginning medication to "about once a week," with her last seizure occurring that same day. (Tr. 136). However, Plaintiff presented to the emergency room on January 31, 2013, reporting a recent spike in seizure activity, with seizures occurring 2 to 3 times a day over the past few days. (Tr. 244-51). Based on the recommendation of Dr. Charlotte Hollman (Tr. 246), doctors increased Plaintiff's Keppra dosage to reduce the frequency of her seizures. (Tr. 247).

Plaintiff's neurologist, Dr. Charlotte Hollman, reported that Plaintiff was currently taking a high dosage of Keppra on April 4, 2013, which had reduced her seizures from 2 to 3 per day, to 2 or 3 per week. (Tr. 255); (Tr. 220) (Plaintiff's Keppra level was in range in March of 2013); (Tr. 254, 255) (Dr. Hollman noted that Plaintiff's Keppra level was "super therapeutic" in April of 2013). Plaintiff's mother told Dr. Hollman that her daughter's seizures consisted of staring spells, which could last minutes, during which she is unresponsive. (Tr. 255). Following a seizure, Plaintiff's mother explained that her daughter experienced headaches and tiredness. (Tr. 255). Dr. Hollman's impression of Plaintiff in April of 2013 was that she suffered from

"persistent generalized seizures with an EEG revealing bifrontal spikes and slow waves." (Tr. 256). As treatment, Dr. Hollman decreased Plaintiff's dosage of Keppra and prescribed a new medication, Depakote. (Tr. 256). Plaintiff's Depakote levels were tested on June 18, 2013 and were within normal range. (Tr. 259).

      The evidence listed above indicates that Plaintiff experienced seizures more than once a week, despite over three months of prescribed treatment with Keppra. This evidence, which was before the ALJ, conflicts with his finding that Plaintiff did not meet any Listing, presumably including Listing 111.03. While parts of this evidence was mentioned by the ALJ at some point in his opinion, he failed to explain what weight, if any, he gave to any piece of evidence or why he felt it did not support Plaintiff's claim that she met Listing 111.03. The evidence before the ALJ, alone, casts doubt on the existence of substantial evidence supporting his Step 3 finding. Moreover, the evidence discussed below, which was presented to the Appeals Council but not the ALJ, casts further doubt on the soundness of the ALJ's decision at Step 3 and warrants remand.

      First, Dr. Hollman's treatment records from September 10, 2013, which were supplied only to the Appeals Council, consistently report that although Plaintiff started taking Depakote in April, she "continue[d] to have seizures about three times per week. Her last seizure was on [September 9, 2013.]" (Tr. 302). Plaintiff's seizures typically lasted for 2 minutes, during which her "eyes roll in the back of her head and she has rhythmic jerking of both arms. She is sleepy after the episodes." (Tr. 302).

      Plaintiff also reported having a seizure at "school when she vomited afterward and complained of a headache." (Tr. 302). This report to Dr. Hollman on September 10, 2013 is

corroborated by Plaintiff's teacher, Patricia Mims, whose written statement was supplied to the Appeals Council. (Tr. 168).  According to Ms. Mims, on September 6, 2013, she observed:

> [Plaintiff] lying across her chair with her head tilted back. Her eyes were rolled back and only white was showing. [Ms. Mims] tried to wake her . . . . She did not respond. . . . [Another teacher] and [Ms. Mims] picked up [Plaintiff] and put her on the table . . . . [They] kept her on her side in case she vomited. She remained unresponsive for about 3 to 5 minutes. . . . [Plaintiff] began to come through . . . . [Ms. Mims] asked how she was feeling and she said her stomach hurt. [Ms. Mims] took her to the bathroom, and then [Ms. Mims] let [Plaintiff] put her head down on her desk. She slept for about 15 to 20 minutes. When [Plaintiff] finally woke up she seemed to be a little disoriented, so [Ms. Mims] asked [another teacher] to hold [Plaintiff's] hand and walk her to the bus. When [that teacher] returned she said that [Plaintiff] vomited before [Plaintiff] got on the bus.

(Tr. 168).

Additionally, Plaintiff's mother told Dr. Hollman during her September 10, 2013 exam that her daughter had recently begun having seizures in her sleep — the first episode occurring on September 5, 2013. (Tr. 302).  Dr. Hollman noted that Plaintiff's most recent Depakote level was 83.1. (Tr. 302).  Ultimately, Dr. Hollman's impression on September 10, 2013 was that Plaintiff "is having generalized tonic clonic seizures with an EEG that reveals frequent bifrontal spikes and slow waves. Her seizures are not controlled on Depakote monotherapy." (Tr. 302).

Dr. Hollman's January 14, 2014 treatment records were likewise not before the ALJ.  During Plaintiff's January 14, 2014 appointment, Dr. Hollman recorded Plaintiff's last seizure as occurring the previous evening.  The seizure lasted about 4 minutes, during which, Plaintiff's "eyes were staring. She was jerking all over and she was biting her tongue." (Tr. 300).  The night-time seizures that began in September of 2013 had been occurring "nightly within 5 minutes of falling asleep since November of 2013." (Tr. 300).  Consistent with her previous medical records, Plaintiff continued to experience day-time seizures about every 2 to 3 days. (Tr. 300).  Dr. Hollman noted that Plaintiff was still taking Depakote to treat her seizures and that she

"has not been missing any doses of medication." (Tr. 300). Ultimately, Dr. Hollman's impression on January 14, 2014 was that "[t]his child continues to have primary generalized tonic clonic seizures. She had an EEG that revealed five frontal spikes and slow waves." (Tr. 301). Dr. Hollman continued Plaintiff's prescription of Depakote and instructed Plaintiff to have her Depakote blood levels checked in the next few days. (Tr. 301).

The evidence discussed above casts considerable doubt on the ALJ's decision that Plaintiff did not meet Listing 111.03. Indeed, these most recent records indicate that over the course of a year, Plaintiff's seizures occurred more than once a week, were marked by alteration of awareness or loss of consciousness, and continued despite more than three months of prescribed treatment with both Keppra and Depakote. The credibility of this evidence and the weight it should accorded, however, "has not been resolved by a fact-finder below." *Sun*, 793 F.3d at 513.

Nonetheless, the Commissioner asks the Court to affirm the ALJ's decision that Plaintiff did not meet Listing 111.03, based on her mother's January 25, 2013 statement that her seizures occurred "about once a week" since beginning Keppra a couple months prior. (Tr. 136). However, about a week later on January 31, 2013, Plaintiff presented to the emergency room complaining of a recent spike in seizures — 2 to 3 a day for the past several days — at which time her dosage of Keppra was increased. (Tr. 244-51). Nonetheless, the January 25, 2013 statement is indeed inconsistent with the remainder of the record evidence — all of which refers to seizures occurring more than once a week. (Tr. 255, 244-51, 300-01, 301-02).

But again, the ALJ failed to resolve or even mention this inconsistency. In fact, neither the ALJ nor the Appeals Council[4] gave any indication as to the significance of or the weight

---

[4] The Court, however, points out that the Appeals Council was under no obligation to discuss any evidence found in the record when denying Plaintiff's request for review.

given to any evidence found in the record. And despite the Commissioner's weighing of the evidence in its brief, this Court cannot base its review on the Commissioner's post-hoc rationalizations. *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) (finding it inappropriate to "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself."). Rather, in light of the evidence discussed above and the ALJ's complete lack of explanation as to why he found Listing 111.03 was not met, a remand of this matter is appropriate. *Sun*, 793 F.3d at 513 ("[d]espite the significance of this new evidence, no fact finder has made findings regarding" the evidence or attempted to reconcile it with other conflicting and supporting evidence in the record. "Assessing the probative value of competing evidence is quintessentially the role of the fact finder. We cannot undertake it in the first instance.") (internal citations omitted); *see also Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013) ("Just as it is not our province to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ, it is also not our province—nor the province of the district court—to engage in these exercises in the first instance.").

## IV.     CONCLUSION

For the reasons given below, **IT IS ORDERED** that the Commissioner's decision be **REVERSED** and Plaintiff's appeal be **REMANDED** for further proceedings, consistent with this Ruling.

Signed in Baton Rouge, Louisiana, on July 25, 2016.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**